TURNÈR *et al.*, executors, *vs.* KIRKPATRICK *et al.*

The will involved in this case is voluminous, confused and perplexing; but construing it and the codicil together, it is held that the children of the testator and his grandson named therein, took a fee simple or absolute estate in the proceeds of the Chattahoochee plantation devised by the will, when sold; and that, the parties all being *sui juris*, there is no need for the executors to longer retain and manage it for the real owner.

January 18, 1887.

Wills. Estates. Construction. Before Judge BOYNTON. Newton Superior Court. March Term, 1886.

John R. Kirkpatrick *et al.*, as legatees under the will of J. T. B. Turner, filed a bill against John W. Turner *et al.*, his executors, for account and settlement, and for construction of the will. The jury found in favor of the defendants as to all matters of account, and by consent, they further found that the remaining realty belonging to the estate should be sold, and the proceeds divided according to the provisions of the will. The chancellor thereupon rendered a decree, holding that the legatees took a fee simple estate in the Chattahoochee plantation or its proceeds, and that the proceeds should be distributed accordingly. The executors excepted.

H. A. MATHEWS, for plaintiffs in error.

SIMMS & SIMMS, for defendants.

JACKSON, Chief Justice.

The question made is, whether the children of the testator and his grandson, Kirkpatrick, took a fee simple or

absolute estate in the Chattahoochee plantation, when sold, or only a life estate with remainder to their children, under the will and codicil before us. It is a very elaborately worded will, much perplexing, by multitudes of words, the hunter after the legal intention of the testator, just as a hunter for game would be annoyed by millions of thickets, briars and leaves in the effort to see where to point his gun. We feel about as apt to miss as to hit. There are one or two little avenues that let in light dimly, and as the rule is to prefer the vesting of a remainder rather than a contingency, and to make words that convey property, without expressed limitations in the clause, pass the fee simple estate, and to turn every estate tail into a fee simple, we have concluded to let in the light, these principles laid down in our code upon this wilderness of uncertainty, and to hold that the children and the grandson named in the will took an absolute estate in the proceeds of the sale.

The fifth item is:

"That my plantation on the Chattahoochee river, in Stewart county, Georgia, and my houses and lots in Cuthbert, Randolph county, Georgia, and my stock in the Cuthbert Manufacturing Company, and one scholarship in Andrew Female College, be disposed of in the following manner; that is to say, the plantation above mentioned to be rented out or sold at a suitable time, without being sacrificed, in the discretion of my executors, and the factory stock and scholarship to be disposed of to the best advantage, without sacrifice, by my said executors."

The sixth is:

"That the proceeds arising from the sale of property in the foregoing item (to-wit, item 5th) shall be appropriated by my executors as designated in item 3rd; that is to say, to be invested in stock, real estate as therein designated, and to vest in my legatees upon the same terms and under the same limitations and restrictions."

The third item thus referred to is :

"That all my personal and perishable property, including my notes and choses in action, be sold by my executors immediately after my death, and the proceeds thereof, including the cash on hand, after giving to each of my legatees (naming them) the sum of five hundred dollars unconditionally, the portion thus designated for the benefit of

my grandson, John T. Kirkpatrick, if a minor at the time of my .death, shall be appropriated by my executors for his maintenance and education to the best advantage, the residue of said fund shall be invested by my said executors in such stock or real estate as in their judgment shall be advisable."

The fourth item, which gives only a life estate to what is bequeathed in the third, so far as *corpus* is concerned, to the children named, but no remainder to anybody, is not referred to in the clause concerning this plantation on the Chattahoochee river, to-wit, the fifth item, though it immediately precedes that fifth item, being the fourth item.

Immediately following the 6th item, that makes the reference to the 3d, is the 7th:

" That each one of my legatees above mentioned shall have the unconditional control and enjoyment of the profits arising from the portion of my estate designated for them respectively, without under any circumstances encroaching on the *corpus* or body of said respective portion, and at the death of either of my legatees, the portion of my estate thus designated for each of them shall descend to their children or child of each of them respectively, to be divided and enjoyed by them upon the same terms and under the same limitations and restrictions as imposed in the foregoing items upon the ancestors. In the event of the death of either one of my said legatees without issue, or, having issue, the children should die, the portion of my estate thus designated for their benefit shall revert to my surviving legatees and respective heirs under the same limitations and restrictions as above mentioned."

The 8th and 9th are special bequests. The 10th is,

"That my said executors, in the distribution in item 5 in regard to the sale of my plantation, factory stock and scholarship in Andrew Female College, make the following deduction of advances heretofore made me, to-wit, to Thomas T. Turner, one thousand dollars; Helen G. Porter, five hundred dollars; Amy G. Bailey, five hundred dollars; John T. Kirkpatrick, my grandson, one thousand dollars."

The 11th is:

"That the plantation of the Chattahoochee river in Stewart county, Georgia, be retained and cultivated or rented, at the discretion of my said executors, and the rents and profits of the same divided among my said legatees, feeling a preference, if advisable, to retain said plantation rather than to invest the value of the same in other real estate."

The last item appoints executors, and the 1st and 2d

provide for burial and debts. The will was executed on October 17th, 1868, several grandchildren, besides John T. Kirkpatrick, being then living.

On the 19th of February, 1874, the codicil was executed. The 1st item related to burial. The 2d is :

"That the 3d item of the will and testament of October 17th, 1868, be changed and revoked as follows: . . . that my perishable property, notes and choses in action shall not be sold before one year after my death, and then only at the discretion of my executors, and if they shall think it will be to the advantage of my legatees to postpone said sale longer than one year, they have the right to do so after consulting with my said legatees, for it is my wish that my executors and legatees should consult and advise each other as to the best interest of my estate. The balance of the said 3d item is changed as follows: It is my will, and I so direct, that my grandson, J. T. Kirkpatrick, mentioned in said will, shall share my estate equally with my children, and my executors shall manage for him until he arrives at the legal age; that is to say, until he becomes twenty-one years of age, and I appoint my said executors his trustees to have control of and to manage his property until he shall become twenty-one years old, and I hereby vest his share of my estate in trust in them for said purposes. It is further my will, and I direct, if my grandson, J. T. Kirkpatrick, shall die without heirs, his share of my said estate shall revert to and be equally divided between my children or legatees. And it is my desire that my said executors shall not permit my grandson, or any part of his property, to be carried out of the State of Georgia. It is my will, and I so direct, that my son, Thomas T. Turner, after my death, receive the sum of three hundred dollars; J. W. Turner, after my death, to receive the sum of three hundred dollars; my grandson, J. T. Kirkpatrick, to receive, after my death, the sum of three hundred dollars; my daughter, Helen G. Porter, after my death, to receive the sum of three hundred dollars; my daughter, Mary A. M. Pitts, after my death, to receive the sum of three hundred dollars; these several sums to be paid them instead of the several amounts given them in item 3d of my will of October 17th, 1868. It is my will, and I so direct, that the three hundred dollars given to my daughter, Amy G. Bailey, in item 3d of my will of October 17th, 1868, go to aid in paying for lands bought for herself and children. It is further my will, and I direct, that after my death my executors shall pay my said daughter, Amy G. Bailey, the sum of three hundred dollars to assist in improving said land."

The third is that:

"I desire my property to vest solely in my child or children, and

also absolutely in my grandson, J. T. Kirkpatrick, when he arrives at age of twenty-one years, and their children after them."

The fourth is:

" That my plantation on the Chattahoochee river in Stewart county, Georgia, be kept by my executors for three years and not be sold, and my house and two lots in Cuthbert be kept for two years, and both places rented to the best advantage, and the annual income shall be divided by my executors among my children or legatees, and J. T. Kirpatrick, share and share alike. My reason for this change is, that I think both places the best investment that could be made. After each of the above terms have expired, my executors, after advising with my legatees, my sell both places, if they think best, and the proceeds of said sale or sales invested as directed in 3d item of will of October 17th, 1868."

The 5th provides specially about the disposition of his house in Fort Valley, to be sold two years after his death, after advising with legatees, and divided between his children or legatees, and grandson, to assist in farming operations. The 6th relates to payment of a debt to the Planters' Bank at Fort Valley and to collecting his stock and dividends therein. The 7th directs that a fund be kept out of this sale of the stock and dividends, cash on hand and cotton sold, to pay expenses and debts and the special legacies left by the codicil and will, and " should there be a surplus after this is done, I direct that it be equally divided between my legatees and, my grandson, J. T. Kirkpatrick." The 8th revokes the deductions for advances provided for in the 10th item of the will. The 9th relates to a watch. The 10th makes a change in one executor.

The 11th and last item in this codicil is:

"That all the property and money that I have given to my two sons, Thomas T. Turner and John W. Turner, in my will of October 17th, 1868, and in codicil, shall vest in my executors, in trust for their use and benefit, free from all debts or liabilities that they may now owe or have incurred, or may hereafter contract or incur. The income of said property to be paid by my executors, as such trustees, to my said two sons and families, the *corpus* of said property not to be spent. I do hereby appoint my executors trustees to carry out these items of my codicil."

The above makes all of the will and codicil of the testa-

tor. It will be observed that while, in the fourth item of the will, the title to the *corpus* of the estate in general is restricted to a life estate in the legatees and grandson, there is no remainder, vested or contingent, therein to any-body, even as respects other property than the plantation here at issue; and that, though that item immediately pre-cedes the fifth, the testator makes no reference to it at all when treating the disposition of the Chattahoochee planta-tion in the fifth, but refers only to the third item. His eye must have been on the fourth if he intended it to con-trol the fifth, and not noticing it shows that he did not mean that it should control the Chattahoochee place and other property specially noticed in the fifth item.

. It will be noted further that, by the seventh item of the will, the same restrictions and limitations are put upon his children's children, or, as sometimes expressed, upon his legatees' children, "as are imposed upon their ances-tors." No title to the *corpus* goes to them after the death of their parents, but they, too, are entitled only to the in-come limited and restricted as to *corpus* and title, abso-lute and unconditioned title thereto, just as much as their ancestors or parents were while they lived. The language is "that each one of my legatees . . . shall have the unconditional control and enjoyment of the property, . . . without under any circumstances enroaching on the *corpus*, . . . and at the death of either of my legatees the portion of my estate thus designated for each of them shall descend to their children or child, . . . to be di-vided and enjoyed by them upon the same terms and un-der the same limitations and restrictions as imposed in the foregoing items upon the ancestors." What terms and re-strictions? Nothing but the enjoyment unconditionally of profits they are to have, but no title to encroach upon the *corpus*. Further, the same item provides for the death of any child of a legatee, he dying too; that share is then to "revert to my surviving legatees and their respective heirs under the same limitations and restrictions as above

mentioned;" meaning that the *corpus* is still to be intact and no title to it to pass. So that if this item be so construed that there are vested remainders and contingent remainders to children of the legatees named in the will, it will convert the scheme into a perpetuity. If it means that the children shall take at the death of the parents, which the words "shall descend to their children or child" would seem to mean, then there is no end to the scheme; for when that child dies and the issue of that legatee is extinct, it goes to the surviving legatees "and their respective heirs," which here in such a scheme would mean issue or children. If a perpetuity, it is illegal, and the fee passes to the first taker; if an estate tail, it becomes a fee simple in the first taker. We incline, therefore, to think that the scheme is, as expressed in this item, construed in connection with the executors being clothed with a trust elsewhere, that the testator was striving to perpetuate this property invested by his executors in stock or real estate, in his family. The Chattahoochee plantation, however, does not necessarily fall within this item at all. That seems to stand alone with the Cuthbert property, segregated from the bulk of the estate, and having in this will, like the heathen, "a law unto itself." There is nothing anywhere in the will or codicil that contracts the estate of the legatees in its proceeds to a life interest. The reference in the fifth item of the will is to the third item therein. If the seventh referred to it or controlled it, or was so designed, some allusion would reasonably have been made to it, as that property is elsewhere in will and codicil treated by itself.

This opinion is strengthened by the 11th item of the will. There the Chattahoochee river plantation is separated from everything, even from its old companions, the Cuthbert property. It is to be retained or rented, at the discretion of his executors, "and the rents and profits of the same divided among my said legatees." So that while they rented it, all the proceeds were to be divided among

the legatees without more, nothing at all being said about their children; and this language would give the legatees a fee in the property, as no less estate is indicated. We turn now to the codicil, which, in our judgment, strengthens the conclusion, expressed in the opening of this opinion, that the legatees took an absolute estate in it. Let it be remembered that the word "legatees," as used by the testator, means his children and the grandson named. That codicil no longer leaves everything to the discretion of the executors, but the legatees are to be consulted. The 2nd codicil-item provides that they shall act "after consulting with my said legatees." The 4th codicil-item, in directions about this plantation, again directs the executors to act "after advising with my legatees." The 5th, in regard to selling the house and lot in Fort Valley, again authorizes its sale after advising with my legatees, using yet stronger language, to-wit: "If, in the best judgment of my executors and my legatees, the said house and lot may be sold," etc. And in the second codicil-item, after the words "after consulting with said legatees," the testator adds, "for it is my wish that my executors and legatees should consult and advise each other as to the best interest of my estate," and before those words he says, "they" (meaning the executors) "shall have the right to do so" (that is, to sell) "after consulting with said legatees;" as much as to say, they shall have no power without their concurrence. These expressions are noted to show his confidence in 1874 had increased in his children since 1868, and property had begun to look up, and he inclined more to sell when they said so.

In the same 2d codicil-item, it is seen that he makes his grandson, Kirkpatrick, "share my (his) estate equally with my children," and makes his executors trustees to manage his share till he was twenty-one years old, which is inconsistent with the idea that they were to be his trustees after that time. And as everywhere he is treated with the chil-

v 77—51

dren of testator, it also tends to show that he did not mean that his children should be also the *cestuis que trust* of the trustees, and have issues and profits paid over to them. But the 3d codicil-item seems to be strong on the idea that Kirkpatrick and the children named in the will took an absolute estate. There he desires that his property—not income, not mere rents or share of rents, but property, that is, the thing itself, the *corpus*—shall vest solely in his children and absolutely in his grandson, Kirkpatrick, " when he arrives at twenty-one years, and their children after them,"—that is, to them and their children in fee. Surely he did not mean that Kirkpatrick, the little grandson, like the other grandchildren, should only have a life estate and his property vest in his children, the testator's great-grandchildren, in fee simple. That would be to give the favored grandson less than the other grandchildren not named in the will. If the estate was only a life estate in the other children, it was in him, and that is unreasonable. The verdict of the jury is, that there were other grandchildren living when the will was made. And this shows, too, that the remainder, if any, in the 7th item of the will is revoked by this item of the codicil, and so is anything in the 4th item of the will that may conflict.

This is not altered in the 4th codicil-item, which provides that the Chattahoochee plantation be sold on consultation, and the proceeds be invested as provided in the 3rd item of the will, because this was necessary for Kirkpatrick while a minor, and for two of the Turners, who, to keep their creditors off of them, were also put under the executors in the last codicil-item, as the testator attempted to do in that item.

The 7th codicil-item also throws light through the tangled growth of this wilderness will. If anything from the sale of bank stock and other personalty is left, after " expenses and debts and the special legacies" are paid, the testatator therein directs " that it be equally divided between my legatees and my grandson, J. T. Kirkpatrick."

Not one word about remainder, but absolute title to each. Moreover, it is well to consider the words " special legacies." They must mean the money each of his children was to get at his death before, owing to the postponement of the sale of the bulk of his property, they got any part of that bulk, because there is no other special legacy at all or like it, except a watch and piano that could not be referred to. And this would seem to help the untangling of this web. To make his estate larger, he directed the postponement of sale, and investment after sale, for division when his grandson perhaps reached twenty-one, and could get his share himself, or rather, until the estate accumulated; and in the meantime, at his death, he provided something for his children from other sources, and these he termed "special legacies." The 11th and last codicil-item also goes to show that the testator did not intend to create a trust estate for all these legatees, as he everywhere terms his children named in the will. For in that 11th item he makes them trustees for the two Turners to take charge of theirs and pay them the income free from their liabilities, and not touching the *corpus*. If already they were trustees, it was unnecessary, and if the legal title was in them or the *corpus* for the others, it was for these too. To make them trustees for the minor grandson elsewhere, and for these in debt in this item, upon the principle *inclusio unius exclusio alterius*, excludes the idea that he intended them to be trustees for all the others.

We have thus traveled with difficulty and hesitation through this very singular and intricate will; and whilst not fully satisfied with the conclusion reached, we are well satisfied that any other result would involve us in more difficulty and leave us less satisfied than we are. All these parties complainant are *sui juris*; there is no need of a trustee for any, if indeed there could have been for any but the grandson when a minor. We are satisfied that they were to have the rents, issues and profits

of this plantation; we think that they were to divide the *corpus* or its proceeds in fee simple, and we can see neither reason nor justice in these executors' longer retaining and managing it for the real owners.   We do not see that the desire of the testator, though dimly visible through labyrinths of multiplied words, has been defeated by the verdict and decree of the court thereon.   To reverse that decree, the plaintiff in error must show the error; it is not shown to us; therefore we sustain the decree of the learned judge below.

Judgment affirmed.